**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

**FILED**

MAR 0 1 2022

AT ~~8:00~~ _____ 1:35 PM
WILLIAM T. WALSH
CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 22-165 (JMV) |
| v. | 18 U.S.C. § 371 |
| AMERICAN EEL DEPOT CORP., | 18 U.S.C. §§ 545 and 2 16 |
| YI RUI HUANG<br>a/k/a "RICKY," | U.S.C. §§ 3372(d) and |
| FEN LIU<br>a/k/a "EMILY," | 3373(d)(3)(A)(i), and 18 U.S.C. § 2 |
| GUO TUAN ZHOU<br>a/k/a "JASON," | |
| CHAO JIN SHI<br>a/k/a "KEVIN," | |
| LIANG CHEN<br>a/k/a "JACKIE," | |
| YUNDONG WEI, | |
| XIUJUAN HUANG ZHOUYI, and | |
| HONG LEE<br>a/k/a "JOHN," | |
| Defendants. | |

**<u>INDICTMENT</u>**

The Grand Jury in and for the District of New Jersey, sitting at Newark,

charges at all times relevant to this Indictment:

## Background

1.      There are sixteen species of freshwater eel on Earth, three of which are heavily seen in the food trade: Japanese eels (*Anguilla japonica*), European eels (*Anguilla anguilla*), and American eels (*Anguilla rostrata*). Often, eel is consumed in the form of unagi, which is roasted or grilled eel fillets. Increasing global demand for unagi has resulted in unsustainable eel fishing, and, in turn, trade restrictions, behind which a multi-billion dollar international black market for freshwater eels flourishes.

2.      Due to the complex biology of freshwater eels, they cannot be bred in captivity, so juvenile eels (called "elvers") of various species are wild-caught around the world and shipped to aquaculture farms in Asia. The eels are grown for one to two years at aquaculture farms before being killed and processed for the unagi trade.

3.      Traditionally, the staple eel species used for unagi was the Japanese eel, a fish species native to the southern Pacific coast of Asia. However, by the 1990s, overfishing of Japanese eel resulted in population levels that could no longer satisfy the market, and the International Union for Conservation of Nature ("IUCN") listed Japanese eels as endangered. As a result, buyers began purchasing European eels – which are native to the waters surrounding Europe – to stock Asian aquaculture farms.

4.      The increased global market demands caused European eel populations to decline. Since the 1960s, the European eel population has fallen by 90 percent. The IUCN currently categorizes European eels as "critically

2

endangered," which means that European eels are facing a high risk of extinction in the wild.

## Relevant Regulatory Scheme

5.      The Convention on International Trade in Endangered Species ("CITES") is an international agreement that protects fish, wildlife, and plants that are or could become imperiled due to the impact of trade and demands of international markets. CITES has been signed by more than 180 countries including, as relevant here, the United States, Ukraine, the Netherlands, China, and Thailand. CITES-listed species are protected according to a classification system known as "Appendices."

6.      At all times relevant to this Indictment, species listed in Appendix II of CITES, such as European eel, were species for which international trade was subject to strict regulation and was only authorized in particularized circumstances. One such requirement is that the exporting country must issue an "export permit" after being advised that "such export will not be detrimental to the survival of that species" and "satisfied that the specimen was not obtained in contravention of the laws of that State for the protection of fauna and flora." CITES, Article IV. In cases of re-export from a country, a similar re-export permit is required. *Id.*

7.      Since 2010, it has been illegal in the European Union and its member countries to export European eels out of the European Union. As a result, since 2010, it has not been possible to obtain a CITES export or re-export permit for European eels out of any country within the European Union.

8.     The Endangered Species Act, Title 16, United States Code, Section 1538(c), makes it unlawful to engage in trade contrary to CITES. U.S. Fish and Wildlife Service Regulations implement CITES in the United States. *See* Title 50, Code of Federal Regulations, Sections 23.1(c) and 23.20(c) ("Except as provided in the regulations in this part, you must have a valid CITES document to engage in international trade in any CITES specimen"). The U.S. regulations require that shipments into the United States of Appendix II species like European eel must be accompanied by a CITES export or re-export permit issued by the country from which the import is shipped. Title 50, Code of Federal Regulations, Section 20.20.

9.     In addition, importers of fish and wildlife are required to submit an import declaration to the U.S. Fish and Wildlife Service identifying the imported fish and wildlife, pursuant to Title 50, Code of Federal Regulations, Section 14.61.

## **Defendants**

10.     Defendant American Eel Depot Corp. (hereinafter, "defendant AED") was incorporated in the State of New York in or about 2007 and has done business at its headquarters in Totowa, New Jersey, since in or about 2014. Defendant AED was a United States-based, multi-national wholesale seafood import/export company that specialized in freshwater eels.

11.     Defendant YI RUI HUANG, a/k/a "Ricky," (hereinafter, "defendant YI RUI HUANG") was a resident of in or around Queens, New York. Defendant YI RUI HUANG acted in his personal capacity and as an employee, officer, and

4

agent of defendant AED. Defendant YI RUI HUANG was the Chief Executive Officer of defendant AED and of Company 1.

12.   Defendant FEN LIU, a/k/a "Emily," (hereinafter, "defendant FEN LIU") was a resident of in or around Queens, New York. Defendant FEN LIU acted in her personal capacity and as an employee, officer, and agent of defendant AED. Defendant FEN LIU was the marketing manager of defendant AED.

13.   Defendant GUO TUAN ZHOU, a/k/a "Jason," (hereinafter, "defendant GUO TUAN ZHOU") was a resident of in or around Queens, New York. Defendant GUO TUAN ZHOU acted in his personal capacity and as an employee, officer, and agent of defendant AED. Defendant GUO TUAN ZHOU was a manager of defendant AED.

14.   Defendant CHAO JIN SHI, a/k/a "Kevin," (hereinafter, "defendant CHAO JIN SHI") was a resident of in or around Queens, New York. Defendant CHAO JIN SHI acted in his personal capacity and as an employee, officer, and agent of defendant AED. Defendant CHAO JIN SHI was an eel buyer for defendant AED.

15.   Defendant LIANG CHEN, a/k/a "Jackie," (hereinafter, "defendant LIANG CHEN") was a resident of in or around Fuzhou, Fujian Province, China. Defendant LIANG CHEN acted in his personal capacity and as an employee, officer, and agent of Company 1. Defendant LIANG CHEN was the Chief of Administration of Company 1.

16.     Defendant YUNDONG WEI (hereinafter, "defendant YUNDONG WEI") was a resident of in or around Fuzhou, Fujian Province, China. Defendant YUNDONG WEI acted in his personal capacity and as an employee, officer, and agent of Company 1. Defendant YUNDONG WEI was the Deputy General Manager of Company 1, where he oversaw Company 1's eel meat factory facilities.

17.     Defendant XIUJUAN HUANG ZHOUYI (hereinafter, "defendant XIUJUAN HUANG ZHOUYI") was a resident of in or around Fuzhou, Fujian Province, China. Defendant XIUJUAN HUANG ZHOUYI acted in her personal capacity and as an employee, officer, and agent of Company 1. Defendant XIUJUAN HUANG ZHOUYI was a finance administrator of Company 1.

18.     Defendant HONG LEE, a/k/a "John," (hereinafter, "defendant HONG LEE") was a resident of in or around Yuen Long, Hong Kong. Defendant HONG LEE operated "intermediate resting facilities" in Hong Kong and Thailand, to which defendants and others would send eels, for ultimate delivery to Company 1.

## COUNT ONE
### (Conspiracy)

19.     Paragraphs 1 through 18 of this Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

20.     From in or about March 2013, through in or about July 2017, in the District of New Jersey, and elsewhere, defendants

6

**AMERICAN EEL DEPOT CORP.,**

**YI RUI HUANG**
**a/k/a "RICKY,"**

**FEN LIU**
**a/k/a "EMILY,"**

**GUO TUAN ZHOU**
**a/k/a "JASON,"**

**CHAO JIN SHI**
**a/k/a "KEVIN,"**

**LIANG CHEN**
**a/k/a "JACKIE,"**

**YUNDONG WEI,**

**XIUJUAN HUANG ZHOUYI, and**

**HONG LEE**
**a/k/a "JOHN"**

(hereinafter, "the defendants") knowingly and intentionally conspired and agreed with each other, and others, to commit the following offenses:

  a. Knowingly import and bring into the United States merchandise, namely, European-eel meat (*Anguilla anguilla)*, contrary to law, in violation of Title 18, United States Code, Section 545; and

  b. Knowingly make and submit, and cause to be made and submitted, a false record, account, and label for and false identification of fish, namely European eel, that was, and was intended to be, imported from a foreign country and transported in foreign commerce, in violation of Title 16, United States Code, Sections 3372(d) and 3373(d)(3)(A)(i).

## Manner and Means of the Conspiracy

21.    It was part of the conspiracy for the defendants to direct and utilize personally overseen, closely held and family-controlled companies to knowingly purchase large volumes of juvenile European eels, called elvers, from Europe and elsewhere, where such eels could not be lawfully exported, and therefore for which defendant AED could not and did not obtain CITES export or re-export documents, for ultimate delivery to Company 1 in China.

22.    It was further a part of the conspiracy that the defendants would ship these elvers to themselves and their closely held and controlled companies through Hong Kong or Thailand and then to Company 1 in China, where the eels would be raised to adulthood, killed, processed into a finished eel-meat product called unagi, packaged and labeled, and then exported from Company 1 in China to defendant AED in the United States, again, knowing that the defendants did not have and could not get the necessary CITES export or re-export permits for this European eel meat to allow then to lawfully import it into the United States.

23.    It was further a part of the conspiracy that the defendants discussed amongst themselves the need to conceal that their imports into the United States from China contained European eel.

24.    It was further a part of the conspiracy that the defendants illegally imported European-eel meat into the United States without the proper CITES permits as required by U.S. law. To conceal their illegal importation scheme, the defendants falsely described shipments as containing only American eel,

when they knew that the shipments in fact contained significant quantities of European eel.

25.    It was further a part of the conspiracy that, from in or about March 2013, through in or about July 2017, the defendants shipped at least 138 shipping containers of eel meat from Company 1 in China to defendant AED in New Jersey, containing a total market value of at least $160 million.

### Overt Acts

In furtherance of the conspiracy and to effect the unlawful objects thereof, the following overt acts, among others, were committed in the District of New Jersey and elsewhere:

**Overt Act 1.** From on or about March 26, 2013, through on or about March 27, 2013, defendants FEN LIU and LIANG CHEN sent and received e-mails to and from each other in which they discussed CITES restrictions on exports of European eel, and the need to label European eel as some other kind of fish for a U.S. customer.

**Overt Act 2.** From on or about May 21, 2013, through on or about May 23, 2013, defendants YI RUI HUANG and HONG LEE sent and received e-mails in which they discussed logistics for shipping European elvers through Malaysia and Thailand and eventually to Hong Kong and China.

**Overt Act 3.** From on or about October 21, 2016, through on or about March 8, 2017, defendants YI RUI HUANG, FEN LIU, and others communicated via WeChat regarding departure and arrival times of shipments carrying elvers to defendant AED's affiliated eel farm in China and to an

intermediate resting facility operated by defendant HONG LEE, the condition and mortality rate of arriving eels, the water temperature at the eel holding facilities, the weight and count of eel shipments, bills of lading, and bank account information for expenses relating to eel shipments.

**Overt Act 4.** On or about January 1, 2017, defendant AED, on the website for one of its Chinese businesses, offered European eel meat for sale in the United States and elsewhere.

**Overt Act 5.** From on or about February 7, 2017, through on or about June 26, 2017, defendants YI RUI HUANG, FEN LIU, LIANG CHEN, and YUNDONG WEI, and others, communicated via WeChat concerning their European eel meat business, their agreement to falsely label and describe the European eel as something else when shipping to the United States and elsewhere, and their understanding that European eel could not be sold lawfully.

## European Eels From the Netherlands

**Overt Act 6.** On or about November 20, 2013, Person A, located in the Netherlands, solicited defendant YI RUI HUANG to purchase European eels that would be shipped out of the Netherlands.

**Overt Act 7.** On or about November 20, 2013, defendant YI RUI HUANG replied to Person A that he was interested in purchasing such elvers, and they discussed quantity, price, and a proposed initial shipping destination of Thailand.

**Overt Act 8.**  On or about November 25, 2013, defendant YI RUI HUANG sent an email to defendant HONG LEE and defendant XIUJUAN HUANG ZHOUYI, asking LEE if he would agree to receive European eel elvers from the Netherlands, falsely labeled as "live crabs," at a facility affiliated with LEE in Thailand.

**Overt Act 9.**  On or about November 27, 2013, defendant HONG LEE agreed to make arrangements for the receipt of the elvers, and provided the address of the facility in Thailand to which the eels would be shipped, for eventual re-shipment to the defendants' facilities in Hong Kong and/or China.

**Overt Act 10.**  On or about November 27, 2013, defendants YI RUI HUANG and XIUJUAN HUANG ZHOUYI discussed how payment would be made for this shipment of elvers.

**Overt Act 11.**  On or about November 28, 2013, defendant YI RUI HUANG informed Person A that defendant CHAO JIN SHI would be traveling to the Netherlands to inspect Person A's elver facility.

**Overt Act 12.**  On or about December 2, 2013, defendant CHAO JIN SHI traveled to the Netherlands to meet with Person A, inspect Person A's facilities, confirm elver inventory and packaging, and facilitate the arrangement between Person A and defendant YI RUI HUANG to purchase European eel elvers that would be raised and processed into eel meat in China for export to the United States and elsewhere.

**Overt Act 13.**  On or about December 3, 2013, defendant YI RUI HUANG and Person A negotiated an agreement by which defendant YI RUI HUANG and

defendant AED would purchase 25 kilograms of European eel elvers from Person A for $57,500.00 in U.S. currency, and Person A would in turn ship the elvers to Thailand.

**Overt Act 14.**  On or about December 3, 2013, defendant YI RUI HUANG and defendant AED paid Person A $57,500 for the European eel elvers. Person A generated an invoice for the elvers identifying the place of shipment as the address in Thailand provided by defendant HONG LEE, and falsely describing the elvers as "Whole round Alive crab."

**Overt Act 15.**  On or about December 6, 2013, defendant YI RUI HUANG instructed defendant CHAO JIN SHI to ensure that the bill of lading for the elvers from Person A did not reflect the name "AED," because he was "worried that there might be issues when [the shipment from Person A] exits customs."

### European Eels from Ukraine

**Overt Act 16.**  On or about March 13, 2015, Person B solicited defendant YI RUI HUANG to purchase European eel elvers that would be shipped out of Ukraine. European eels are rarely found in the waters of Ukraine.

**Overt Act 17.**  On or about March 13, 2015, defendant YI RUI HUANG replied to Person B that he was interested in purchasing such elvers, and they discussed quantity, price, and a proposed shipping destination of Hong Kong.

**Overt Act 18.** On or about December 23, 2015, Person B sent an invoice to defendant GUO TUAN ZHOU, by which he billed defendant AED for this shipment of 32 kilograms of elvers. Person B solicited defendant GUO TUAN

ZHOU to send him a wire payment of $9,600.00 as a prepayment on the total invoiced amount of $32,000.00, to a bank account in Kiev, Ukraine.

**Overt Act 19.** On or about December 26, 2015, Person B shipped 32 kilograms of European eel elvers to defendant AED from in or around Kiev, Ukraine, to a holding facility used by defendant AED and operated by defendant HONG LEE in Hong Kong.

**Overt Act 20.** On or about February 27, 2016, Person B solicited defendant GUO TUAN ZHOU to send him a wire payment of $40,000.00 to a bank account in Canada, with a remaining balance to be calculated when defendant GUO TUAN ZHOU and/or other employees of defendant AED visited him in Ukraine.

**Overt Act 21.** From on or about March 3, 2016, to on or about March 18, 2016, defendant CHAO JIN SHI traveled to Ukraine to meet with Person B regarding European eel elver shipments.

**Overt Act 22.** On or about March 7, 2016, defendant XIUJUAN HUANG ZHOUYI transmitted a wire transfer receipt to defendant GUO TUAN ZHOU, showing a payment of $100,000.00 to the Canadian bank account of Person B.

**Overt Act 23.** On or about March 14, 2016, through on or about March 19, 2016, defendants XIUJUAN HUANG ZHOUYI, GUO TUAN ZHOU, and others discussed, via the electronic message system "WeChat," multiple shipments of elvers from the Ukraine to Company 1, passing through Thailand and Hong Kong. In this conversation, they discussed, among other things, the

prices of the elvers, the amount of elvers dying in the process, and the $100,000.00 payment to the bank account of Person B.

### Shipments Into the United States

**Overt Act 24.**  On or about October 14, 2015, defendant AED imported from China a shipping container of eel meat, which included European-eel meat, into the United States, without a CITES re-export permit as required by U.S. law.

**Overt Act 25.**  On or about October 25, 2016, defendant AED imported from China a shipping container of eel meat, which included European-eel meat, into the United States, without a CITES re-export permit as required by U.S. law.

**Overt Act 26.**  On or about November 14-15, 2016, defendants YI RUI HUANG and AED submitted documentation to the U.S. Fish and Wildlife Service, falsely describing the October 25, 2016, shipment as American eel.

**Overt Act 27.**  On or about June 1, 2017, Company 1 and defendants LIANG CHEN and YUNGDONG WEI exported from China, and defendants YI RUI HUANG, FEN LIU, and AED imported, a shipping container of eel meat, which included European-eel meat, into the United States, without a CITES re-export permit as required by U.S. law.

**Overt Act 28.**  On or about June 6, 2017, Company 1 and defendants LIANG CHEN and YUNGDONG WEI exported from China, and defendants YI RUI HUANG, FEN LIU, and AED imported, a shipping container of eel meat,

which included European-eel meat, into the United States, without a CITES re-export permit as required by U.S. law.

**Overt Act 29.** On or about June 13, 2017, defendants LIANG CHEN and FEN LIU sent false documents to customs brokers regarding the June 1, 2017, and June 6, 2017 shipments, to be provided to the U.S. Fish and Wildlife Service.

**Overt Act 30.** On or about June 13, 2017, defendant AED submitted import documentation to U.S. Fish and Wildlife Service, falsely describing the June 1, 2017, and June 6, 2017, shipments as American eel.

**Overt Act 31.** On or about June 13, 2017, Company 1 and defendant YUNGDONG WEI exported from China, and defendants YI RUI HUANG, FEN LIU, and AED imported, a shipping container of eel meat, which included European-eel meat, into the United States, without a CITES re-export permit as required by U.S. law.

**Overt Act 32.** On or about June 13, 2017, defendant AED submitted import documentation to U.S. Customs and Border Protection, falsely describing the June 13, 2017, shipment as American eel.

**Overt Act 33.** On or about July 5, 2017, Company 1 and defendant YUNGDONG WEI exported from China, and defendants YI RUI HUANG, FEN LIU, and AED imported, two shipping containers of eel meat, which included European-eel meat, into the United States, without CITES re-export permits as required by U.S. law.

**Overt Act 34.** On or about July 25, 2017, Company 1 and defendant YUNGDONG WEI exported from China, and defendants YI RUI HUANG, FEN LIU, and AED imported, a shipping container of eel meat, which included European-eel meat, into the United States, without a CITES re-export permit as required by U.S. law.

In violation of Title 18, United States Code, Section 371.

## COUNTS TWO THROUGH SIX
### (Smuggling)

26.    Paragraphs 1 through 18 of this Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

27.    On or about the dates specified in the table below, and at the Port of New York and New Jersey, in Elizabeth, New Jersey, in the District of New Jersey, and elsewhere, the defendants specified in the table below, did knowingly import and bring into the United States, and cause the import of and cause to be brought into the United States, merchandise, namely, European eel meat (*Anguilla anguilla*), contrary to Title 16, United States Code, Section 1538(c), and Title 50, Code of Federal Regulations, Sections 14.61, 23.1, and 23.20.

| Count | Defendants | Date (on or about) |
|-------|------------|--------------------|
| 2 | AED, YI RUI HUANG, FEN LIU, LIANG CHEN, and YUNDONG WEI | June 1, 2017 |
| 3 | AED, YI RUI HUANG, FEN LIU, LIANG CHEN, and YUNDONG WEI | June 6, 2017 |

| 4 | AED, YI RUI HUANG, FEN LIU, and YUNDONG WEI | June 13, 2017 |
| 5 | AED, YI RUI HUANG, FEN LIU, and YUNDONG WEI | July 5, 2017 |
| 6 | AED, YI RUI HUANG, FEN LIU, and YUNDONG WEI | July 25, 2017 |

In violation of Title 18, United States Code, Sections 545 and 2.

## COUNTS SEVEN THROUGH NINE
### (Lacey Act False Labeling)

28.    Paragraphs 1 through 18 of this Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

29.    On or about the dates specified in the table below, at the Port of New York and New Jersey, in Elizabeth, New Jersey, in the District of New Jersey, and elsewhere, the defendants specified in the table below, did knowingly make and submit, and cause to be made and submitted, a false record, account, label for, and a false identification of fish, that is, European eel, that was, and was intended to be, imported from a foreign country and transported in foreign commerce, in that the defendants falsely stated that the fish was American eel, when in truth and in fact, as the defendants then knew, it was not American eel:

| Count | Defendants | Date (on or about) | Documents (including but not limited to) |
|-------|-----------|--------------------|------------------------------------------|
| 7 | AED, YI RUI HUANG, FEN LIU, LIANG CHEN, and YUNDONG WEI | June 1, 2017 | List of Shipment Products Description Attestation of Jianxin Huang Product Inspection Report |

| 8 | AED, YI RUI HUANG, FEN LIU, LIANG CHEN, and YUNDONG WEI | June 6, 2017 | List of Shipment Products Description Attestation of Jianxin Huang Product Inspection Report |
|---|---|---|---|
| 9 | AED, YI RUI HUANG, FEN LIU, and YUNDONG WEI | June 13, 2017 | List of Shipment Products Description |

In violation of Title 16, United States Code, Sections 3372(d)(1-2) and 3373(d)(3)(A)(i), and Title 18, United States Code, Section 2.

### FORFEITURE
### (Smuggling)

30.     The allegations contained in Counts Two through Six of this Indictment are hereby realleged and incorporated by reference as if fully set forth herein for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 982(a)(2)(B) and 545 and Title 28, United States Code, Section 2461(c).

31.     Upon conviction of one or more of the offenses alleged in Counts Two through Six of this Indictment, the defendants shall forfeit to the United States, pursuant to Title 18, United States, Code, Section 982(a)(2)(B), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the smuggling offenses, and, pursuant to Title 18, United States Code, Section 545 and Title 18, United States Code, Section 2461(c), any merchandise introduced into the United States in violation of Section 545, or the value thereof.

32.     If any of the property, as a result of any act or omission of the defendants: (a) cannot be located upon the exercise of due diligence; (b) has

been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property which cannot be divided without difficulty; the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), incorporated by Title 18, United States Code, Section 982(b) and Title 28, United States Code, Section 2461(c).

33.    The United States will also seek a forfeiture money judgment against the defendants in the amount of any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of Counts 1 through 10, pursuant to Title 18, United States Code, Section 982(a)(7).

Pursuant to Title 18, United States Code, Sections 545 and 982(a)(2)(B) and Title 28, United States Code, Section 2461(c).

A TRUE BILL

FOREPERSON

TODD KIM
ASSISTANT ATTORNEY GENERAL
U.S. DEPARTMENT OF JUSTICE
ENVIRONMENT AND NATURAL RESOURCES DIVISION

By: _____
Matthew D. Evans
Ethan Eddy
Trial Attorneys
U.S. Department of Justice
Environmental Crimes Section

CASE NUMBER: ___22-165(JMV)_____

# United States District Court
# District of New Jersey

## UNITED STATES OF AMERICA

### v.

### AMERICAN EEL DEPOT CORP.,

### YI RUI HUANG
### a/k/a "RICKY,"

### FEN LIU
### a/k/a "EMILY,"

### GUO TUAN ZHOU
### a/k/a "JASON,"

### CHAO JIN SHI
### a/k/a "KEVIN,"

### LIANG CHEN
### a/k/a "JACKIE,"

### YUNDONG WEI,

### XIUJUAN HUANG ZHOUYI, and

### HONG LEE
### a/k/a "JOHN"

# INDICTMENT FOR

### Conspiracy, 18 U.S.C. § 371

### Smuggling, 18 U.S.C. §§ 545 and 2

### Lacey Act, 16 U.S.C. §§ 3372(d) and 3373(d)(3)(A)(i), and 18 U.S.C. § 2

A True Bill,

**Foreperson**

Todd Kim
Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division

Ethan Eddy
Matthew Evans
Trial Attorneys
Washington, DC
202-305-0202