*United States v. American Eel Depot, et al.,*
22-cr-165-JMV

Att. **D** to Gov't Opp. to Mot. to Dism.

| **DEPARTMENT OF THE INTERIOR** **U.S. FISH AND WILDLIFE SERVICE** **OFFICE OF LAW ENFORCEMENT** | | REPORT OF INVESTIGATION REPORT#: 2015501394R018 | |

Note: This document contains neither recommendations nor conclusions of the Office of Law Enforcement, U.S. Fish and Wildlife Service. It is the property of this office and is loaned to your agency. It, and its contents are not to be distributed outside of your agency.

| *CASE TITLE* AMERICAN EEL DEPOT *SENSITIVE CASE* | *REPORT DATE* 05/30/2018 | *CASE NUMBER* 2015501394 |
|---|---|---|
| | *REPORTING OFFICER* Amy Snyder - | *CASE STATUS* PENDING |
| | *APPROVED BY* Preston Fant, ⸻ - 06/28/2018 Jeffrey Odom,      - *Approval Pending* Amy Snyder, S      05/30/2018 | |

*SUBJECTS OF REPORT*

ASIA AQUATIC COMPANY LTD.
YI RUI HUANG  -  AMERICAN EEL DEPOT CORPORATION
YI RUI HUANG  -  CHANGLE PACIFIC FOOD CORP.
CHAO JIN SHI  -  OCEAN GREAT LLC.
GUO TUAN ZHOU SR.  -  AMERICAN EEL DEPOT CANADA CORP.

*SYNOPSIS*

This report documents AMERICAN EEL DEPOT, and CHANGLE PACIFIC FOOD CO., (CP)/CHANGLE PACIFIC FOREIGN TRADE CORP.'s (also referenced as CP), attempts to alter shipping manifests and divert three ocean containers of illegal eel meat to avoid the detention, inspection, and seizure of these containers by the United States Fish and Wildlife Service (Service) and United States Customs and Border Protection (CBP). This report will document AED's knowledge that they are subjects in an ongoing criminal investigation involving eel trafficking, and AED's and CP's subsequent efforts to obstruct this investigation by tampering with shipping records and evidence in this case.

*DISTRIBUTION*
*Internal List*

AED-0011449

This document contains neither recommendations nor conclusions of the Office of Law Enforcement, U.S. Fish and Wildlife Service. It is the property of this office and is loaned to your agency. It, and its contents, are not to be distributed outside of your agency.

## REPORT OF INVESTIGATION
### Title: AMERICAN EEL DEPOT

**INV #: 2015501394**
**Report #: 018**

## DETAILS OF INVESTIGATION

### Container Inspections of AED Container #s 1-3, June 2017

As previously noted in R015, six (6) 40-foot ocean containers of eel meat were illegally imported by AED from CP in June and July of 2017. These containers were all imported into the NY/NJ seaport and detained by CBP for Service inspection.

Three of these containers, (referred to as Container #s 1, 2, and 3), were imported and detained for inspection in early June 2017. These containers were inspected on June 7, June 13, and June 16, 2017 respectively. AED filed CBP entries for these containers, and import documents were provided to CBP. CBP issued detention letters to AED for all three detained containers in June. Per CBP's detention letters, .

AED and associates responded to all three CBP detention notices in writing, acknowledging proprietorship of all three containers of imported eel meat. These response letters to CBP were dated from June 14, 2017 through June 21, 2017.

### AED's Discovery of Service Action on AED Imported Eel Meat, Warehouse Meat Seizures

Since April 30, 2014, AED has known they are ongoing targets of the Service's eel trafficking investigation. AED learned this during the first Service search warrant at AED's Totowa, NJ headquarters, when special agents (SAs) conducted interviews with AED management, and seized live American glass eels (*Anguilla rostrata*), documents, electronic evidence, and fishing equipment.

On June 27, 2017, the Service executed a second Federal search and seizure warrant at AED's Totowa, NJ headquarters for this same eel trafficking investigation. On this date, AED employees learned that AED was additionally under Service investigation for knowingly trafficking in processed European eel (*Anguilla anguilla*) meat. During this warrant, Service SAs verbally informed AED management that the Service was targeting AED-imported containers of eel meat at the border, that illegal eel meat had been collected from AED imports, and that this eel meat was evidence in the Service's ongoing criminal investigation. AED management was also provided with copies of the search warrant, including Attachments A, B, and C, which specifically stated that eels, including frozen eel meat, related to violations of the Lacey Act, Endangered Species Act, Smuggling, and Conspiracy statutes, were subject to seizure as evidence, fruits, and instrumentalities of these crimes.

Additionally during this warrant, the Service constructively seized all eel meat located at the AED premises, totaling approximately eighty-two (82) pallets. These pallets were sampled then

Form 3-300B
(Rev. 01/25/2012)

Att. D to Gov't Opp - Page 2

AED-0011451

This document contains neither recommendations nor conclusions of the Office of Law Enforcement, U.S. Fish and Wildlife Service. It is the property of this office and is loaned to your agency. It, and its contents, are not to be distributed outside of your agency.

## REPORT OF INVESTIGATION
### Title:  AMERICAN EEL DEPOT

### INV #:  2015501394
### Report #: 018

shrink-wrapped, and marked with evidence tape and government seizure stickers. SA Amy Snyder informed Guo Tuan ZHOU, aka Jason ZHOU, AED co-owner and Vice President, that this eel meat was evidence in the Service's Federal investigation and could not be "removed, altered, tampered with, sold, distributed, manipulated, or in any way interfered with". ZHOU then signed an affidavit acknowledging that he understood this and a copy of this affidavit was provided to ZHOU. (See attachment #1; ZHOU Affidavit).

### AED's and CP's Subsequent Attempts to Impede U.S. Federal Investigation, Container #s 4-6

At the time of the June 27, 2017 AED search warrant, three additional ocean containers of eel meat were en route to AED in the U.S. from CP in China. These containers are referred to as Container #s 4, 5, and 6. At no point during the June 2017 search warrant did AED approach Service SAs about these pending imports.

On June 29, 2017, at 10:47 and 10:48 a.m., CBP placed examination holds on Container #s 4 and 5. Per CBP, the steamship line Yang Ming, AED's freight forwarder EZ Logistics, and AED's broker Unipac Shipping Inc., would have learned of these government holds through the CBP Automated Commercial Environment (ACE) system at the time each hold was placed.

On June 29, 2017, at 5:03 p.m., AED defense attorney Peter Klestadt sent an email to Department of Justice's Environmental and Natural Resources Division (ENRD) prosecutors Shane Waller and Cassandra Barnum, stating that he would be advising AED: not to file required CBP entries for future containers to avoid declaring species, to refuse the containers at import, and to have the "shipper" return containers back to their country of export (China). Waller then forwarded Klestadt's email to SA Snyder so the Service could ensure the alerts and holds on AED's containers were upheld.

Form 3-300B
(Rev. 01/25/2012)

AED-0011452

This document contains neither recommendations nor conclusions of the Office of Law Enforcement, U.S. Fish and Wildlife Service. It is the property of this office and is loaned to your agency. It, and its contents, are not to be distributed outside of your agency.

## REPORT OF INVESTIGATION
## Title:  AMERICAN EEL DEPOT

**INV #:  2015501394**
**Report #: 018**



(*SA's note: Per CBP import regulations, entries and import documents are required for any import where merchandise is valued over $2,500.00. Per Service regulations, any European eel importations would require Convention on International Trade in Endangered Species of Wild Fauna and Flora (CITES) permits and Service declaration at the time of import. Both CBP and Service regulations required entry declarations to be filed for these containers. Additionally, once government examination holds are placed on shipments, these examinations must occur and the lawfulness of the merchandise must be established, before the cargo is authorized for release to the shipper or consignee. Circumvention of these procedures is prohibited. Further, as documented in prior reports, AED the consignee company, and CP the foreign exporter, are both operated by the same individual, Yi Rui HUANG, and both companies are targets of this investigation. Lastly as established below, despite numerous references to these containers being returned to the 'shipper' in China, AED did not intend to return these containers to CP in China, but to send this illegal eel meat to co-conspirators ASIA AQUATIC COMPANY LIMITED [ASIA*

Page 4 of 46

Form 3-300B
(Rev. 01/25/2012)

This document contains neither recommendations nor conclusions of the Office of Law Enforcement, U.S. Fish and Wildlife Service. It is the property of this office and is loaned to your agency. It, and its contents, are not to be distributed outside of your agency.

# REPORT OF INVESTIGATION
## Title:  AMERICAN EEL DEPOT

**INV #:  2015501394**

**Report #: 018**

*AQUATIC] in Hong Kong. Hong Kong, a Special Administrative Region of the People's Republic of China is an autonomous territory from China, and independent party to CITES. Hong Kong would also require CITES permits for any European eel imports.*)

On July 4, 2017, CBP placed additional Service holds on Container #4 and Container #5.

On July 4, 2017, CBP placed an enforcement hold on Container #6 for examination. Per CBP, Yang Ming, EZ Logistics, and Unipac Shipping Inc., would have learned of these government holds through the CBP ACE system, at the time this hold was placed.

Importer Security Filings (ISF) are advanced shipment facts sent to CBP for U.S. bound ocean cargo. They must be filed by the importer or broker prior to the shipment leaving foreign soil. ISFs were transmitted from Unipac Shipping Inc. to CBP on June 2, 2017 for Container #4, on June 2, 2017 for Container #5, and on June 23, 2017 for Container #6. All three ISFs stated that these containers of eel meat were U.S. imports by AED in Totowa, NJ, from CP in China. Master bills of lading were created by the shipping line, Yang Ming, on June 2, 2017 for Container #4, on June 2, 2017 for Container #5, and on June 23, 2017 for Container #6. All three bills of lading were manifested to CBP as U.S. imports.

Container #4 [#YMLU5335736], Container #5 [#YMLU5349581], and Container #6 [#YMLU5384216]), were then imported into the United States via the seaport of NY/NJ on July 5, 2017, July 5, 2017, and July 25, 2017 respectively.

AED then failed to file entries with CBP for all three imported containers, despite CBP import laws requiring entries to be filed for any import where merchandise is valued over $2,500.00. Per CBP Acting Chief Michael Hrudowsky, importers have fifteen days from the date of arrival to file entry, and this entry must be accompanied by commodity specific information and detailed import documents. Prior to AED becoming aware of the European eel component of the Service investigation, AED continuously filed CBP entries for imports of eel meat.

As documented above in ISFs and bills of lading (as well as in order forms and shipping paperwork to be documented in future ROIs), AED intended to import Container #s 4, 5, and 6. It was not until AED was notified that their imported eel meat was subject to seizure as evidence in their ongoing criminal case, and that Container #s 4-6 had been placed on CBP inspection holds, that AED attempted to alter these containers from U.S. imports, to diversions back to Asia. Prior to Container #s 4-6, AED had never been known to export eel meat from the United States.

Form 3-300B
(Rev. 01/25/2012)

AED-0011454

This document contains neither recommendations nor conclusions of the Office of Law Enforcement, U.S. Fish and Wildlife Service. It is the property of this office and is loaned to your agency. It, and its contents, are not to be distributed outside of your agency.

# REPORT OF INVESTIGATION
**INV #:  2015501394**

**Title:  AMERICAN EEL DEPOT**
**Report #: 018**

While responses to CBP detention notices are not required, neither AED nor any affiliate companies responded to notices for these last three containers, in contrast to their written responses for the first three containers. Both AED's failure to file required CBP entries and the lack of responses to CBP detention notices is noteworthy because these are deviations from their normal practices. AED's attempts to remove these containers from the U.S. despite CBP and Service holds for pending inspections, (documented below), suggests AED knew the last three containers would also contain illegal European eel meat, and as such, further evidence in a criminal proceeding, before even the Service confirmed this through preliminary DNA testing in August 2017 and October 2017. (*SA's note: As noted in R015, samples taken from Container #s 4-6 contained 88%, 89%, and 79% European eel meat respectively.*)

**AED's Unlawful Attempted Exports of Container #s 4 and 5**

On May 1, 2018, SA Snyder spoke to Yang Ming's Assistant Vice President Lisa Hay. Hay stated that Yang Ming informed AED's freight forwarder EZ Logistics LLC that Container #s 4 and 5 were under CBP NII examination holds on July 7, 2017. These messages were sent to four EZ Logistics employees through Yang Ming's internal system. These messages were sent to EZ Logistics employees because EZ Logistics holds the shipping contract with Yang Ming.

On May 4, 2018, SA Snyder spoke to EZ Logistics CEO "Charlie" Yong Zhao. Zhao stated that EZ Logistics informed AED that their containers were on hold with CBP via email and by phone. Zhao added that AED would have also been able to see any government holds on AED containers by entering their container numbers into Yang Ming's database, as well as by entering their container numbers into the shipping terminal's databases (in this case Global Container Terminal) at any time.

On or about July 7, 2017, AED began attempting to have Container #s 4 and 5 exported from the United States via CBP. An email from Patrick Caulfield, an attorney with AED's defense counsel, to CBP Acting Chief Michael Hrudowsky, dated July 7, 2017, explained that AED no longer wanted to enter Container #s 4 and 5 into the U.S., and requested that CBP lift the holds on these containers so "AED International" could export the goods back to China. (*SA's note: It should be noted that AED's defense counsel did not mention Service involvement or the Service's ongoing criminal investigation to CBP, nor did they copy Service or ENRD personnel on these communications with CBP.*)

Form 3-300B
(Rev. 01/25/2012)

AED-0011455

This document contains neither recommendations nor conclusions of the Office of Law Enforcement, U.S. Fish and Wildlife Service. It is the property of this office and is loaned to your agency. It, and its contents, are not to be distributed outside of your agency.

# REPORT OF INVESTIGATION

## Title:  AMERICAN EEL DEPOT

**INV #:  2015501394**

**Report #: 018**

**From:** Caulfield, Patrick J.
**Sent:** Friday, July 07, 2017 2:30:04 PM
**To:** HRUDOWSKY, MICHAEL J.
**Subject:** Container Nos. YMLU5335736 and YMLU5349581

Hi Michael –

I hope all has been we well.

We have an issue with two containers that are currently being held at Global Terminal by U.S. Customs and Border Protection at the Port of Newark.  The container numbers are YMLU5335736 and YMLU5349581.  Our client, American Eel Depot International, no longer plans to enter these goods and would like to export the containers back to China. Accordingly, we would like CBP to remove the hold so the goods can be re-exported.  Is there any way you can help?  I can go through the problem resolution e-mail if you prefer, but I thought it may be quicker to reach-out to you directly.  The matter is somewhat urgent on our end because the last free day is today and the goods (frozen eels) are perishable.  Anything you could do would be greatly appreciated.

Best Regards,
Patrick

_____

**Patrick J. Caulfield, Esq.**

Associate

## GDLSK

**GRUNFELD | DESIDERIO | LEBOWITZ**

**SILVERMAN & KLESTADT LLP**

Acting Chief Hrudowsky responded to Caulfield on this same date asking if AED had made export bookings. Caulfield responded by stating that AED had not yet made bookings but would do so as soon as possible if necessary to secure the release of the containers. Acting Chief Hrudowsky then responded by saying CBP was unable to remove holds until IEs (Immediate

Page 7 of 46

Form 3-300B
(Rev. 01/25/2012)

AED-0011456

This document contains neither recommendations nor conclusions of the Office of Law Enforcement, U.S. Fish and Wildlife Service. It is the property of this office and is loaned to your agency. It, and its contents, are not to be distributed outside of your agency.

## REPORT OF INVESTIGATION
**Title:  AMERICAN EEL DEPOT**

**INV #:  2015501394**
**Report #: 018**

Exports) and booking information was confirmed.

> **From:** HRUDOWSKY, MICHAEL J. [mailto:MICHAEL.J.HRUDOWSKY@cbp.dhs.gov]
> **Sent:** Friday, July 7, 2017 4:14 PM
> **To:** Caulfield, Patrick J.
> **Subject:** RE: Container Nos. YMLU5335736 and YMLU5349581
>
>
> Good evening,
>
> We are unable remove the hold until an IE is on file and booking information is confirmed.
>
> Thanks,
> Mike

(*SA's note: In a phone conversation with Acting Chief Hrudowsky on May 30, 2018, Hrudowsky clarified that his July 7, 2017 response to Caulfield meant that these containers would need IEs filed and booking information provided, **once** Service examinations determined these goods were lawful, **or** if the Service determined that IE was an appropriate course of action should violations be identified. CBP does not allow IEs or Foreign Cargo Remaining On Board / Remaining On Board (FROB/ROBs) to be used to circumvent planned government inspections. Once shipments are placed on CBP holds, CBP requires that they be examined before the cargo is cleared for movement. Caulfield's request to remove the holds (prior to inspection) was thus not honored by CBP, as these containers had already been flagged for inspection, and were suspected to contain wildlife contraband. Per Acting Chief Hrudowsky, at no time were Container #s 4-6 authorized to move anywhere but to East Coast Warehouse (ECW) for examination.*)

On July 14, 2017, Caulfield emailed Acting Chief Hrudowsky stating the shipper (CP) had booked transport for the containers to be returned to China. Hrudowsky responded that he was not sure if export had been approved for these containers but would inquire. On July 17, 2017, Caulfield emailed Hrudowsky asking if export had been approved yet and noted that the shipper (CP) was "anxious to have the goods back". Acting Chief Hrudowsky responded that CBP had forwarded the export requests to the PGA (Partner Government Agency, i.e., the Service).

Page 8 of 46

Form 3-300B
(Rev. 01/25/2012)

AED-0011457

This document contains neither recommendations nor conclusions of the Office of Law Enforcement, U.S. Fish and Wildlife Service. It is the property of this office and is loaned to your agency. It, and its contents, are not to be distributed outside of your agency.

## REPORT OF INVESTIGATION
### Title:  AMERICAN EEL DEPOT

INV #:  2015501394
Report #: 018

From: Caulfield, Patrick J.
Sent: Monday, July 17, 2017 4:17:20 PM
To: HRUDOWSKY, MICHAEL J.
Subject: RE: Container Nos. YMLU5335736 and YMLU5349581

Thanks, Mike.  Can you advise as soon as you know whether export has been approved?  The shipper is anxious to have these goods back.

Best,
Patrick

Patrick J. Caulfield, Esq.
Associate

## GDLSK

GRUNFELD | DESIDERIO | LEBOWITZ
SILVERMAN & KLESTADT LLP
599 Lexington Avenue - 36th Floor, New York NY 10022-7648
D: 212.973.7785 | P: 212.557.4000 | F: 212.557.4415
PCaulfield@GDLSK.com
www.GDLSK.com

Per Acting Chief Hrudowsky, on July 24, 2017, IEs were self-filed in ACE by "AQZ" (EZ Logistics' broker: Flegenheimer International Inc.) for both containers to be exported from the U.S. These IEs show that the containers would be transported by Yang Ming to CP in Fuzhou, China. The IE record filed for Container #4 is 924055613 and the IE record filed for Container #5 is 924055602. As noted below in email correspondence and Yang Ming shipping records, these containers were actually to be transported by Yang Ming to Hong Kong.

Ultimately, AED and CP's attempts to remove Container #s 4 and 5 from the United States via EZ Logistics and Yang Ming, were not successful as these containers had already been offloaded from their vessels and were en route from the shipping terminal to ECW for examination.

### AED's Unlawful Export of Container #6

On June 23, 2017, an ISF was filed by AED's broker Unipac Shipping Inc., showing Container #6 as a U.S. import to AED from CP in China. On June 23, 2017, the bill of lading was created by Yang Ming manifesting this container as a U.S. import. During the June 27, 2017 search warrant at AED, AED was notified that their imported eel meat was subject to seizure as evidence in a criminal case. On July 4, 2017, CBP placed an enforcement hold on this container. As identified below in subpoena returns, AED and CP began their attempts to divert Container #6 on or about July 7, 2017.

Form 3-300B
(Rev. 01/25/2012)

AED-0011458

This document contains neither recommendations nor conclusions of the Office of Law Enforcement, U.S. Fish and Wildlife Service. It is the property of this office and is loaned to your agency. It, and its contents, are not to be distributed outside of your agency.

## REPORT OF INVESTIGATION
**Title: AMERICAN EEL DEPOT**

**INV #: 2015501394**
**Report #: 018**

On July 14, 2017, this bill of lading was altered in ACE from a U.S. import to a FROB. (*SA's note: FROB or Foreign Cargo Remaining On Board, or ROB, Remaining On Board, are terms used by the import/export community to describe cargo that originates in a foreign port and is destined for a foreign port, but remains on board the ship during stops in U.S. ports.*) Per CBP Supervisory Officer Gilberto Puente-Rolon, it is unusual for a bill of lading to be amended prior to import and this bill of lading was amended and deleted numerous times in ACE.

Container #6 made import into the U.S at the seaport of NY/NJ on July 25, 2017. On this date, CBP transmitted additional instructions to Yang Ming, EZ Logistics, and Unipac Shipping Inc. in ACE which read, "TRANSFER TO EAST COAST CES FOR       EXAM". The container was then unloaded from the ship on July 25, 2017 and sat on U.S. soil at Global Container Terminals for two days.

On or about July 26, 2017, AED defense attorney Peter Klestadt and ENRD attorneys Barnum and Waller began corresponding about a potential constructive seizure of AED's illegally imported containers of eel meat. This email reflects the government's intentions of seizing AED's illegally imported containers of eel meat at least one day after Container #6 first made import in the U.S.

---

From: Klestadt, Peter W. [mailto:PKlestadt@gdlsk.com]
Sent: Wednesday, July 26, 2017 6:05 PM
To: Waller, Shane (ENRD) <SWaller@ENRD.USDOJ.GOV>
Cc: Barnum, Cassandra (ENRD) <CBarnum@ENRD.USDOJ.GOV>
Subject: AED follow up [GDLSK-FileRoom.FID677696]


Dear Shane and Cassie,


A few follow up items:

1.  Status of government testing reports?

2.  Status of constructive seizure agreement? – I sent you an example of what CBP uses. Let me know if that works.

---

On July 27, 2017, Container #6 was unlawfully restowed onto the Yang Ming vessel and set sail from the seaport of NY/NJ, without undergoing government examination or obtaining CBP clearance.

On July 31, 2017, an additional CBP NII hold was placed on this container.

On August 1, 2017, this ship arrived in the port of Wilmington, Delaware.

Page 10 of 46

Form 3-300B
(Rev. 01/25/2012)

AED-0011459

This document contains neither recommendations nor conclusions of the Office of Law Enforcement, U.S. Fish and Wildlife Service. It is the property of this office and is loaned to your agency. It, and its contents, are not to be distributed outside of your agency.

## REPORT OF INVESTIGATION
## Title: AMERICAN EEL DEPOT

**INV #: 2015501394**
**Report #: 018**

On August 2, 2017, Yang Ming received a formal, written redelivery order from CBP, ordering that Container #6 be redelivered to the NY/NJ seaport and presented for CBP examination.

On August 2, 2017, this ship arrived in Savannah, GA. On August 2, 2017, and again on August 3, 2017, Yang Ming acknowledged receipt of CBP's redelivery order but did not comply.

On August 3, 2017, this ship and Container #6 set sail for Busan, South Korea despite numerous CBP holds on this container. In communications between CBP supervisors and Yang Ming, Yang Ming requested that CBP cancel the redelivery order, stating that returning this container to the U.S. would be expensive for their customer and could cause them to lose this customer. In these communications, Yang Ming stated that this container was FROB and it had not been removed from the vessel in NY/NJ. CBP informed Yang Ming that this container *was* removed from the ship, per Global Container Terminal, and that Yang Ming could face CBP penalties for moving cargo held by CBP.

Yang Ming later agreed to redeliver Container #6 back to the United States. On or about August 30, 2017, this vessel and Container #6 made import in Busan, South Korea. This container was re-imported into the United States via the seaport of NY/NJ on September 26, 2017. (*SA's note: Per Supervisory CBP Officer Puerte-Rolon, Yang Ming's unauthorized move of Container #6 while this container was held by CBP, was in violation of Title 19 U.S.C. 1595a (b), 19 CFR 113.64B and 19 CFR 4.38. CBP has since charged Yang Ming with a penalty of $294,000.00 which was mitigated down to $25,000.00. This penalty is awaiting payment by Yang Ming at this time.*)

### Records and Information Provided by Global Container Terminals

Global Container Terminal is the NY/NJ seaport terminal where Container # 6 was offloaded in July 2017. In November 2017, Global Container Terminals provided records to SA Snyder reflecting that Container #6 was definitively off-loaded from the Yang Ming vessel on July 25, 2017 at Global Container Terminal, and sat for two days before the container was restowed onto the Yang Ming vessel on July 27, 2017. An August 2, 2017 email from Yang Ming's Vicky Hsiao to various CBPOs and Yang Ming employees, (provided by Global Container Terminal),

Page 11 of 46

Form 3-300B
(Rev. 01/25/2012)

AED-0011460

This document contains neither recommendations nor conclusions of the Office of Law Enforcement, U.S. Fish and Wildlife Service. It is the property of this office and is loaned to your agency. It, and its contents, are not to be distributed outside of your agency.

# REPORT OF INVESTIGATION
## Title: AMERICAN EEL DEPOT

**INV #: 2015501394**
**Report #: 018**

reflected that on July 7, 2017 the shipper (CP) requested to return the container to origin because the consignee (AED) refused the cargo.

**Records and Information Provided by EZ Logistics**

EZ Logistics is a freight forwarder for AED. On November 15, 2017, SA Snyder placed a telephone call to Jennifer Zheng, of the EZ Logistics office in Englewood Cliffs, New Jersey to discuss Container #6. During this call Zheng stated the following:

- AED has been working with attorneys due to problems with their containers
- Container #6 was imported but remained on board because AED did not want it. It was sent to Hong Kong
- EZ Logistics CEO Yong Zhao, aka Charlie Zhao in the EZ Logistics' California office, also deals with AED
- Song Yang of EZ Logistics' China office emailed their U.S. office saying to keep Container #6 on the ship because AED did not want it anymore and there was an issue with the shipper (CP), the containers, and the eel
- Zheng thought there were U.S. Department of Agriculture (USDA) rejections
- AED had several problem containers at ECW that did not clear CBP
- Zheng's points of contact at AED are Emily LIU and ZHOU
- AED had emailed and called Zheng to say they did not want Container #6 because the first few were stuck at the seaport
- Yang Ming changed Container #6 to FROB per the instruction of AED and the EZ Logistics China office (who received the order from CP)
- Because AED requested this container be changed to FROB, EZ Logistics told Yang Ming to change it (from a U.S. import to FROB). There is an email where Yang Ming confirms they changed this container to FROB
- AED wanted their two prior containers (Container #s 4 and 5) also changed to FROB so all three containers would be returned to Asia but the other two containers (4 and 5) were already discharged off the ship so they could not be re-exported
- AED reached out to EZ Logistics at the end of June/early July to have three containers (4-6) re-exported
- Zheng stated it was obvious to her that AED was in trouble and EZ Logistics did not want to get mixed up in it

Form 3-300B
(Rev. 01/25/2012)

AED-0011461

This document contains neither recommendations nor conclusions of the Office of Law Enforcement, U.S. Fish and Wildlife Service. It is the property of this office and is loaned to your agency. It, and its contents, are not to be distributed outside of your agency.

## REPORT OF INVESTIGATION
**INV #:  2015501394**
**Title:  AMERICAN EEL DEPOT**
**Report #: 018**

- These shipments were originally listed as U.S. imports but since there were problems clearing CBP, AED wanted Container #6 returned to the shipper
- Zheng thinks Container #6 went to Korea then Hong Kong
- If containers are FROB, companies do not have to submit any export paperwork and they do not leave the ship
- CP in China told them to send this container to ASIA AQUATIC in Hong Kong. Song Yang of EZ Logistics in China, also told Zheng to send it to ASIA AQUATIC
- When asked why some documents show EZ Logistics as the consignee of AED shipments, Zheng explained that house bill of ladings show who owns the shipments/the true consignees (AED), and master bill of ladings show who owns the space on the ship/contract with the steam line (EZ Logistics)
- AED had called Yang Ming directly about these containers but Yang Ming only speaks with service contract holders (EZ Logistics)
- Unipac Shipping Inc. was probably AED's broker for these shipments but Zheng was not sure. No one from Unipac Shipping Inc. reached out to Zheng, she thinks because they do not want to be involved in this "mess"
- Charlie had informed LIU that Container #6 was being returned to the United States
- The foreign shipper (CP) pays for transporting AED's shipments
- CP pays for EZ Logistics services, freight, etc. CP hired EZ Logistics in China
- If shipments have problems with CBP or USDA etc., Zhao deals with these cases
- The EZ Logistics China office would definitely have a lot of correspondence with CP

On November 15, 2017, SA Snyder placed a telephone call to Yong Zhao, aka Charlie Zhao, CEO of EZ Logistics, based in Cerritos, California, to discuss Container #6. During this call Zhao stated the following:

- 4-5 of AED's prior containers had been rejected by CBP prior to Container #6
- AED informed the shipper (CP) that CBP would not allow the containers' import
- Shipper in China (CP) told EZ Logistics' China office to send Container #6 to Hong Kong as the customer (AED) did not want it
- The EZ Logistics office in Fuzhou told Yang Ming to send the container to Hong Kong
- Zhao did not know why the container was shipped to Hong Kong, he just knew that the container could not return to China. Zhao stated he has been in the import/export business for thirty years and no one wants containers returned to China as the Chinese government

Form 3-300B
(Rev. 01/25/2012)

AED-0011462

This document contains neither recommendations nor conclusions of the Office of Law Enforcement, U.S. Fish and Wildlife Service. It is the property of this office and is loaned to your agency. It, and its contents, are not to be distributed outside of your agency.

## REPORT OF INVESTIGATION
**Title:  AMERICAN EEL DEPOT**

**INV #:  2015501394**
**Report #: 018**

may need to determine why the goods were being returned, and there may be higher export duties to pay. Zhao added that 99% of re-exported containers are not returned to China but sent to Vietnam or Hong Kong instead. If U.S. agencies such as the Food and Drug Administration or USDA reject a shipment, the goods will not be returned to China but sent to other countries to avoid seizures and taxes. Per Zhao, if containers are returned to China the factory could be blacklisted by Chinese authorities so that is likely why it was sent to Hong Kong

- The export of this container was arranged by the EZ Logistics office in Fuzhou
- CP told EZ Logistics to tell Yang Ming not to discharge the container, but keep it on the ship and send it to Hong Kong via Korea
- CBP then sent the redelivery order to return the container to the U.S.
- LIU told Zhao that AED wanted all three containers including the prior two imports, (Container #s 5 and 6) removed from the U.S.
- EZ Logistics was concerned about detention fees because EZ Logistics as the freight forwarder pays fees pending importer reimbursement
- If shipments are on hold more than 5-10 days Zhao knows there are problems with the cargo
- EZ Logistics communicates with Yang Ming, not AED, because EZ Logistics holds the contract with Yang Ming
- LIU is Zhao's point of contact at AED
- LIU stated AED wanted the other containers on hold removed from the U.S. EZ Logistics told them they could not do this because the containers are on hold with CBP
- EZ Logistics in China was pushing CP to destroy or abandon the cargo. AED did not want involvement
- Shipper (CP) told Yang Ming to leave Container #6 on the ship and change the shipping manifest (from a U.S. import) to FROB
- AED said their first shipments were rejected so they did not want the cargo
- Zhao thought it was "weird" that AED no longer wanted their cargo
- Zhao was told Container #6 was imported and restowed on the ship
- Lowe Wong is the EZ Logistics point of contact in Fuzhou, China. Song Yang is another
- Zhao has never met anyone from AED. The local EZ Logistics agent in Fuzhou, China knows the factory (CP) well as they are in the same city and CP exports a lot of cargo through EZ Logistics Fuzhou

Form 3-300B
(Rev. 01/25/2012)

AED-0011463

This document contains neither recommendations nor conclusions of the Office of Law Enforcement, U.S. Fish and Wildlife Service. It is the property of this office and is loaned to your agency. It, and its contents, are not to be distributed outside of your agency.

# REPORT OF INVESTIGATION      INV #: 2015501394
## Title: AMERICAN EEL DEPOT           Report #: 018

- Zhao not sure who AED's broker is but thinks Unipac Shipping Inc. handled prior two containers (Container #s 4 and 5). Container #6 may not have had broker assistance
- EZ booked IEs for both July 5, 2017 imports (Container #s 4 and 5) but these containers were already at ECW. CP told EZ Logistics Fuzhou to change Container #6 to FROB

In November 2017, EZ Logistics provided documents to SA Snyder pursuant to

In one email dated June 30, 2017, (three days after the AED search warrant), EZ Logistics' Jennifer Zheng emailed Yang Ming stating that AED spoke to Yang Ming about these shipments and AED wants to leave the two July 5, 2017 containers on the ships and not to discharge them as they no longer wanted them and would not file Customs entries. This email also notes that AED wanted to "return the shipments back to Hong Kong".

---

VESSEL HANOVER BRIDGE V064E

YMLUE227009369

YMLUE227009391


Good Morning Brenda,


I believe our customer American Eel Depot just spoke to you about these two shipments. They do not want these shipments, will not file customs entry upon arrival. They would like to return the shipments back to Hong Kong. If possible, they would like to leave the containers on the same vessel and not to discharge them. Please advise how to proceed. Thanks.


Best Regards,

Jenny Zheng

EZ Logistics LLC

---

On July 5, 2017, an email from Jennifer Zheng to EZ Logistics employees questions AED's intentions to return Container #s 4 and 5 to Hong Kong, because both containers were under CBP examination holds. Zheng notes that the containers must be transported to a bonded warehouse for examination and that the containers would not be authorized to move until the exams were completed, CBP holds were removed, and the examination charges were paid.

Form 3-300B
(Rev. 01/25/2012)

AED-0011464

This document contains neither recommendations nor conclusions of the Office of Law Enforcement, U.S. Fish and Wildlife Service. It is the property of this office and is loaned to your agency. It, and its contents, are not to be distributed outside of your agency.

# REPORT OF INVESTIGATION
## Title: AMERICAN EEL DEPOT

INV #: 2015501394
Report #: 018

**From:** Jennifer Zheng
**Date:** 2017-07-05 23:35
**To:** emmal@ez-logistics.com
**CC:** 'Joewew'; 'michaelc'; 'songy'; 'Yong Zhao'
**Subject:** RE: FW: YMLUE227009369 & YMLUE227009391 RETURN TO HONG KONG

American Eel Depot will think again about returning as both containers are flagged for I Exam by US Customs. They must be discharged from the vessel and trucked to bonded warehouse for exam. They cannot start the return process until exam is complete, shipment is released by customs, and all exam charges are settled. If released by customs, they may not return them. They have to wait and see.

An email chain provided by Zhao to SA Snyder on May 10, 2018, shows LIU asking EZ Logistics to help arrange the IEs of Container #s 4 and 5 on July 7, 2017.



Included in this email string was a July 7, 2017 email from AED's defense attorney Peter Klestadt, forwarding Caulfield's aforementioned communications with Hrudowsky to LIU and ZHOU, advising them to arrange the IEs and CBP will lift the holds.

Page 16 of 46

Form 3-300B
(Rev. 01/25/2012)

AED-0011465

This document contains neither recommendations nor conclusions of the Office of Law Enforcement, U.S. Fish and Wildlife Service. It is the property of this office and is loaned to your agency. It, and its contents, are not to be distributed outside of your agency.

# REPORT OF INVESTIGATION
## Title:  AMERICAN EEL DEPOT

**INV #:  2015501394**

**Report #: 018**

---------- Forwarded message ----------
From: **Klestadt, Peter W.** <PKlestadt@gdlsk.com>
Date: Fri, Jul 7, 2017 at 4:19 PM
Subject: Fwd: Container Nos. YMLU5335736 and YMLU5349581
To: "jasoneel123@gmail.com" <jasoneel123@gmail.com>, "emilyliu386@gmail.com" <emilyliu386@gmail.com>

See below. Arrange the export and then customs will lift the hold. Please confirm.

**Best Regards,**

**Peter**

_____

Peter W. Klestadt, Esq.

Partner

GRUNFELD | DESIDERIO | LEBOWITZ

SILVERMAN & KLESTADT LLP

599 Lexington Avenue - 36th Floor, New York NY 10022-7648

D: 212.973.7728 | P: 212.557.4000 | F: 212.557.4415

PKlestadt@GDLSK.com

wwwGDLSK.com

Department of Justice contract translator                reviewed the following July 8, 2017 email
between EZ Logistics employees in Mandarin:

发件人: songy@ez-logistics.com

发送时间: 2017-07-08 10:49:32

收件人: Jennifer Zheng

抄送: emmal; loewew; michaelc; songy; Yong Zhao

主题: Re: RE: RE: YMLUE227009369 & YMLUE227009391 RETURN TO HONG KONG

Dear Jenny,

E2270093690/E227009391/E227009519 以上三票退运货物，发货人了解到，只要YML知I E退租资料，柜子就可以无需目的港清关，直接出退运单号将货彩退间香港，请帮忙联系YML确认，I E退租如何操作，需要我们提供什么资料，谢谢！

translated this message to:

From: songy@ez-logistics.com

Sent: 07-08-2017 10:49:32

Page 17 of 46

Form 3-300B
(Rev. 01/25/2012)

AED-0011466

This document contains neither recommendations nor conclusions of the Office of Law Enforcement, U.S. Fish and Wildlife Service. It is the property of this office and is loaned to your agency. It, and its contents, are not to be distributed outside of your agency.

# REPORT OF INVESTIGATION
## Title:  AMERICAN EEL DEPOT

**INV #:  2015501394**
**Report #: 018**

To: Jennifer Zheng

Cc: emmal; loewew; michaelc; songy; Yong Zhao

Subject: Re: RE: RE: YMLUE227009369 & YMLUE227009391 RETURN TO HONG KONG

Dear Jenny,

Regarding the three batches of cargo above to be returned, E2270093690/E227009391/E227009519, the consignor learnt that as long as YML does the I.E container return materials, the containers would not require clearance at the destination port. The containers can be returned to Hong Kong directly through issuance of return ticket numbers. Please contact YML to confirm how to handle I.E container returns and what materials we need to provide, thank you!

This email reflects that the consignor (CP) intended to change Container #s 4-6 to Immediate Exports to Hong Kong, explicitly because they believed it would enable these containers to avoid seeking clearance at the U.S. port of NY/NJ (a clearance which CBP and the Service would not have authorized due to the unlawfulness of this cargo).

Department of Justice contract translator              reviewed the following July 12, 2017 email between EZ Logistics employees in Mandarin:



**From:** songy [mailto:songy@ez-logistics.com]
**Sent:** Wednesday, July 12, 2017 5:46 AM
**To:** Jennifer Zheng
**Cc:** emmal; loewew; michaelc; Yong Zhao
**Subject:** Re: Re: RE: RE: YMLUE227009369 & YMLUE227009391 RETURN TO HONG KONG

Dear Jenry,

E227009391/E227009369 以上两票，艾货人有让收货人去处理海关验货及转运的事项，烦请函收货人了解下事情近展状态及后续处理情况，那谢!

2017-07-12
_____

Tks.&B.rgds

SONGYANG

EZ LOGISTICS LLC
Tel: 86-591-83827256    Fax: 86-591-87540202
Cell: 18305927601

SONGY@ez-logistics.com

Page 18 of 46

Form 3-300B
(Rev. 01/25/2012)

AED-0011467

This document contains neither recommendations nor conclusions of the Office of Law Enforcement, U.S. Fish and Wildlife Service. It is the property of this office and is loaned to your agency. It, and its contents, are not to be distributed outside of your agency.

## REPORT OF INVESTIGATION

**Title:  AMERICAN EEL DEPOT**

**INV #:  2015501394**

**Report #: 018**

Wang translated this message to:

From: songy [mailto:songy@ez-logistics.com]

Sent: Wednesday, July 12, 2017 5:46 AM

To: Jennifer Zheng

Cc: 'emmal'; 'loewew'; 'michaelc'; 'Yong Zhao'

Subject: Re: Re: RE: RE: YMLUE227009369 & YMLUE227009391 RETURN TO HONG KONG

Dear Jenny,

The consignor has asked the consignee to deal with the issues regarding customs inspection and transfer for both E227009391/ E227009369 above. Could you please ask the consignee about its progress and follow-up processing, thank you!

2017-07-12

Tks.&B.rgds

SONGYANG

EZ LOGISTICS LLC

Tel: 86-591-83827256    Fax: 86-591-87540202

Cell: 18305927601

SONGY@ez-logistics.com

*(SA's note: This email confirms that AED and CP were aware that Container #s 4 and 5 were on CBP examination holds, and that CP expected AED to handle the movement of these containers.)*

On May 21, 2018, Zhao provided SA Snyder with a July 12, 2017 email from LIU to EZ Logistics. In this email LIU simultaneously attempts to distance AED from Container #s 4 and 5, while also trying to expedite their IE. In this email LIU instructs Zheng and Zhao to, 'Please work with Yan Ming [*sic*] and take care of this IE as soon as possible." LIU adds, "Please help and solve this as soon as you can so we can all put this behind us". This email is noteworthy in

Page 19 of 46

Form 3-300B
(Rev. 01/25/2012)

AED-0011468

This document contains neither recommendations nor conclusions of the Office of Law Enforcement, U.S. Fish and Wildlife Service. It is the property of this office and is loaned to your agency. It, and its contents, are not to be distributed outside of your agency.

# REPORT OF INVESTIGATION
## Title: AMERICAN EEL DEPOT

**INV #:  2015501394**
**Report #: 018**

that it indicates AED's continued interest in these containers despite their refusal of the containers at the U.S. border.

From: Liu Emily <emily@eeldepot.com>
Sent: Wednesday, July 12, 2017 7:28 AM
To: Jenny Zheng <jennyz@usa-ezlogisticsllc.com>; zhao Y Zhao <yongz@usa-ezlogisticsllc.com>
Subject: Fwd: 7512 (IE) [GDLSK-FileRoom.FID677696]

Dear Jenny

Good morning.

Please see attachment. It stated that a logistic company can file the IE without the broker license.

Please understand that EZ logistic is the consignee for these 2 containers. EZ logistic is responsible for these 2 containers since we reject the shipments. Please work with Yan Ming and take care this IE as soon as possible.

AED and our broker can't do anything on the IE because the container does not belong to us.

Please help and solve this as soon as you can so we can all put this behind us.

Thank you very much for your help.


Emily

Best Regards & Many Thanks,
Branch Manager/ Sales Director
AMERICAN EEL DEPOT CORP.
405 Minnisink Rd. Totowa NJ 07512
www.eeldepot.com
TEL: 973-890-8888 ext.110
FAX:973-890-8880
EMAIL: emily@eeldepot.com

A July 12, 2017 email from EZ Logistics confirms that AED did not want Container #s 4-5 moved to a bonded warehouse for examination, but to have these containers instead shipped to Hong Kong:

发件人：Jennifer Zheng
发送时间：2017-07-12 23:15:31
收件人：'songy'
抄送：'emmal'; 'loewew'; 'michaelc'; 'Yong Zhao'
主题：RE: Re: RE: RE: YMLUE227009369 & YMLUE227009391 RETURN TO HONG KONG
Consignee does not want to dray to bonded warehouse for exam. They want to return back to Hong Kong. Export booking has been made, waiting for their broker to cut I/E.

Form 3-300B
(Rev. 01/25/2012)

AED-0011469

This document contains neither recommendations nor conclusions of the Office of Law Enforcement, U.S. Fish and Wildlife Service. It is the property of this office and is loaned to your agency. It, and its contents, are not to be distributed outside of your agency.

## REPORT OF INVESTIGATION
## Title: AMERICAN EEL DEPOT

### INV #: 2015501394
### Report #: 018

In an email dated July 7, 2017, Yang Ming's Vicky Hsaio informs EZ Logistics' Jennifer Zheng that they must pursue "re-export" of the three containers to Hong Kong through Yang Ming, and notes that both July 5, 2017 imports are at Global Container Terminal on "exam hold". This reflects that AED intended to send all three containers to Hong Kong, and that Yang Ming and EZ Logistics were tracking CBP examination holds and sharing this information with AED.

Re:

EC2722E ~ HANNOVER BRIDGE 064E

E227009369 ~ YMLU5335736

E227009391 ~ YMLU5349581

LFD 7/7/2017 @ Global terminal ~ on exam hold


EC2725E ~ YM UBIQUITY 031E

E227009519 ~ YMLU5384216

ETA NY 7/25




Hi Jenny,

To further proceed re-export the above listed 3 containers to HK please contact YM Export dept. manager Lisa( in CC) for further instruction.

In an email dated July 10, 2017, Jennifer Zheng, informed Yang Ming that their customer (AED) would like to "return above two shipments back to Hong Kong". Zheng adds, "They would like YML to issue I/E for return cargo so no      Exam needs to be done in NY." This email demonstrates that AED sought to avoid     'CBP examination in NY.

Page 28 of 46

AED-0011477

This document contains neither recommendations nor conclusions of the Office of Law Enforcement, U.S. Fish and Wildlife Service. It is the property of this office and is loaned to your agency. It, and its contents, are not to be distributed outside of your agency.

## REPORT OF INVESTIGATION
## Title: AMERICAN EEL DEPOT

INV #: 2015501394
Report #: 018

From: Jennifer Zheng [mailto:jennyz@usa-ezlogisticsllc.com]
Sent: Monday, July 10, 2017 11:48 AM
To: Lisa Peng - hou exp <lisapeng@us.yangming.com>
Cc: Brenda Carlo - hou imp <BrendaCarlo@us.yangming.com>; HOU NAT EXP <HOUNATEXP@us.yangming.com>; Cathy Carver - hou imp nat <cathycarver@us.yangming.com>; Vicky Hsiao - hou imp <vickyhsiao@us.yangming.com>; Y Zhao <yongz@usa-ezlogisticsllc.com>
Subject: RE: YMLUE227009369 & YMLUE227009391 and " E227009519" RETURN TO HONG KONG

Good Afternoon Lisa,

Confirmed with our customer they would like to return above two shipments back to Hong Kong. We guarantee $75.00 per unit of YML bond surcharge.

They would like YML to issue I/E for return cargo so no     Exam needs to be done in NY. Please issue booking confirmation and advise how to proceed from there. Thanks.


Best Regards,
Jenny Zheng
EZ Logistics LLC

A July 12, 2017 email from a Yang Ming employee to Jennifer Zheng, shows that Yang Ming changed Container #6 to "ROB" to be sent from New York to Hong Kong via Busan, South Korea.

Herewith attached " ROB " – YMLU5335736 / RQ of YHU434043 – via " BSN " to HKG out of NYC port booking confirmation file for your reference .

*(SA's note: On May 14, 2018, Zhao of EZ Logistics provided SA Snyder with the attachment referenced in this email but not provided by AED. This attachment, titled "YHU434043.pdf", shows Yang Ming changed Container #6 from a U.S. import to FROB/ROB on July 11, 2017. This document shows that Container #6 was to arrive at Global Container Terminal in NJ on July 25, 2017 and be exported on July 27, 2017 to Hong Kong via South Korea.)*

Form 3-300B
(Rev. 01/25/2012)

AED-0011478

This document contains neither recommendations nor conclusions of the Office of Law Enforcement, U.S. Fish and Wildlife Service. It is the property of this office and is loaned to your agency. It, and its contents, are not to be distributed outside of your agency.

## REPORT OF INVESTIGATION

**Title: AMERICAN EEL DEPOT**

**INV #: 2015501394**

**Report #: 018**

发件人: songy [mailto:songy@ez-logistics.com]
发送时间: 2017年8月15日 11:32
收件人: YMFOC FREP Vicky Lee
抄送: 'emma'
主题: SpamRe: 转发: E227009519 RETURNED TO HONG KONG ** EC2725E YM UBIQUITY 031E ETA USNYC 7/25 **
重要性: 高

Dear Vicky,

Shpr don't agree to return back to NEW YORK,USA.
So they don't provide the commercial invoice.TKS!

2017-08-15

Tks.&B.rgds

**SONGYANG**

**EZ LOGISTICS LLC**

Tel: 86-591-83827256   Fax: 86-591-87540202

Cell: 18305927601

SONGY@ez-logistics.com

发件人: YMFOC FREP Vicky Lee
发送时间: 2017-08-09 16:31:33
收件人: 'songy'
抄送: 'emma'
主题: 转发: E227009519 RETURNED TO HONG KONG ** EC2725E YM UBIQUITY 031E ETA USNYC 7/25 **
Dear Song,

As per below message, please kindly help to provide a copy of the commercial invoice for E227009519 accordingly because USA Customs insisted to return the cargo back to NYC for inspection.
Thank you very much for your corporation.

Tks & b regds!
Vicky Lee

On August 22, 2017, EZ Logistics'' Song Yang responded to Yang Ming that EZ Logistics had tried negotiating with the shipper (CP) many times but CP was adamant that Container #6 not be returned to the U.S. Song Yang added that CP threatened a lawsuit against Yang Ming if Yang Ming complied. Song Yang then instructed Yang Ming to continue trying to convince CBP to cancel the redelivery order.

Page 33 of 46

Form 3-300B
(Rev. 01/25/2012)

AED-0011482

This document contains neither recommendations nor conclusions of the Office of Law Enforcement, U.S. Fish and Wildlife Service. It is the property of this office and is loaned to your agency. It, and its contents, are not to be distributed outside of your agency.

## REPORT OF INVESTIGATION

**Title:  AMERICAN EEL DEPOT**

**INV #:  2015501394**

**Report #: 018**

发件人：songy [mailto:songy@ez-logistics.com]
发送时间：2017年8月22日 16:45
收件人：YMFOC FREP Vicky Lee
抄送：'emmal'
主题：SpamRe: 答复: SpamRe: 转发: E227009519 RETURNED TO HONG KONG ** EC2725E YM UBIQUITY 031E ETA USNYC 7/25 **
重要性：高

TO: PIC in Yangming Line

We have negociated with shipper for many times, they insist this shipment can not be returned to USA.This shipment is on the way back fm USA to Hongkong at the moment, why does the USA customs require shipment return to USA immediately？Is there any offical document fm Customs?

2

Shipper announced again that they can not accept shipment return to  USA without formal and reasonable requirement by American Customs. In case it happens, client may bring a suit agaist Yangming Line later.

Pls try your best to negociate with USA customs again, and have cargoes return to HK as plan.

Thanks for your cooperation!

2017-08-22

Tks.&B.rgds

SONGYANG

Included in the supplemental documents provided by AED was a copy of CBP's Export Examination Notification. This order had been provided to Yang Ming the morning of August 2, 2017, prior to this container leaving the U.S. for South Korea. AED's possession of this

Form 3-300B
(Rev. 01/25/2012)

AED-0011483

This document contains neither recommendations nor conclusions of the Office of Law Enforcement, U.S. Fish and Wildlife Service. It is the property of this office and is loaned to your agency. It, and its contents, are not to be distributed outside of your agency.

# REPORT OF INVESTIGATION
## Title:  AMERICAN EEL DEPOT

**INV #:  2015501394**
**Report #: 018**

document shows AED was aware this container had been on CBP hold since July 4, 2017 and that the container had been and still was, required to be transferred to ECW for inspection.

---

**U.S. Customs and Border Protection**
**Export Examination Notification**

Date Held: _07/04/17_

Record: _CBPFW1_

The following cargo has been detained for examination as provided for under 15 CFR Section 758.7. The detained cargo is not to be released without permission of Customs and Border Protection. Carriers holding export cargo selected for examination will notify and provide this document to the exporter, and make notification to the terminal of a CBP hold.

VESSEL: _YM UBIQUITY_   VOY _31E_   EXPORT DATE: _Redelivery Notice_

BL/BOOKING _YMLUE227009519_   CONTAINER: _YMLU5384266_ CARRIER: _Yang Ming_

TERMINAL

CARGO IS DETAINED. DO NOT LOAD OR REMOVE FROM EXPORT LOCATION.

_X_ CARGO MUST BE TRANSFERRED TO EAST COAST CES FOR OUTBOUND ENFORCEMENT EXAM.

CARGO MUST BE TRANSFERRED TO H&M CES FOR OUTBOUND ENFORCEMENT EXAM.

CARGO MUST BE TRANSFERRED TO HOWLAND HOOK/GCT CES FOR OUTBOUND ENFORCEMENT EXAM.

CARGO MUST BE TRANSFERRED FOR VACIS EXAM (X-RAY), WHICH IS LOCATED AT RED HOOK TERMINAL. IN THE EVENT THAT A FULL DEVANNING IS REQUIRED AFTER VACIS EXAM, IT WILL OCCUR AT RED HOOK TERMINAL.

CARGO MUST BE TRANFERRED FOR VACIS (NII) EXAM AT DESIGNATED CES CHECKED BELOW PRIOR TO ENFORCEMENT EXAM.

## EXAM  SITE

H&M CES 732-510-2870

_X_ EAST COAST CES  908-351-2800

HOWLAND HOOK TERMINAL (NYCT)(718) 273-7000 ext# 316

RED HOOK TERMINAL (718) 875-0777   ext# 218

OTHER:

IT IS THE RESPONSIBILITY OF THE EXPORTER TO MAKE THE CARGO AVAILABLE AND TO BEAR THE COSTS OF EXAMINATIONS. EXPORT EXAMINATIONS WILL BE PERFORMED AT A C.E.S.  AS PER [INFORMATION PIPELINE #04-05 - 7/15/2004]

## CUSTOMS EXPORT  HOLD  REMOVAL  NOTICE

All Cargo listed on BL/DR/BOOKING # REMOVED FROM HOLD

OTHER

Officer:            Badge #:            DATE:

**QUESTIONS: Cars (201) 443-0500 // Gen.Cargo (201) 443-0300**

---

Page 35 of 46

Form 3-300B
(Rev. 01/25/2012)

AED-0011484

This document contains neither recommendations nor conclusions of the Office of Law Enforcement, U.S. Fish and Wildlife Service. It is the property of this office and is loaned to your agency. It, and its contents, are not to be distributed outside of your agency.

# REPORT OF INVESTIGATION

**INV #: 2015501394**

**Title: AMERICAN EEL DEPOT**

**Report #: 018**

Later this same day, Vicky Lee of Yang Ming in Fuzhou emailed a Yang Ming colleague stating that per the local shipper's (CP's) request (Container #6) would be returned to Hong Kong.

---

**From:** YMFOC FREP Vicky Lee [mailto:vicky.lee@cn.yangming.com]
**Sent:** Friday, July 07, 2017 3:47 PM
**To:** YM-CRRE Jack Chen 陳有毺); YM-CRRE 歐美冷種組; YM-CMTC 美洲美務管理組; YM-CMTC Darren Chang 張鈞絀; 'Vicky Hsiao - hou imp'; YM-CTRT 批價組
**Cc:** 'Cathy Carver - hou imp nat'; 'Brenda Cario - hou imp'; 'Vince Lee - bsc atpp'; USA, Houston - Mey Peng; 'Richard Lu - bsc atpp'; USA, Houston - hou_nat imp; USA, Houston - hou_exp; China, Fuzhou
**Subject:** 转发: E227009519 RETURNED TO HONG KONG
**Importance:** High

Dear Jack,

As per local shipper's request. E227009519 will be returned to HONGKONG.

Please kindly find attached G/L for your reference and help to settle accordingly with many thanks.

Tks & b regds!

Vicky Lee

Young-Carrier Co. Ltd. FuZhou Rep. office

TEL: 86-591-87808387-201

FAX: 86-591-87807386

Office Mail:ymfoc@cn.yangming.com

Private Mail:vicky.lee@cn.yangming.com

---

Included in this chain was the same bill of lading provided by EZ Logistics, showing Container #6 was destined for ASIA AQUATIC.

One July 9, 2017 email, provided to SA Snyder on May 25, 2018 by Yang Ming's Lisa Hay, show that the local shipper (EZ Logistics Fuzhou on behalf of CP) intended to file IEs for Container #s 4 and 5 specifically to avoid container examinations at the Port of NJ/NJ. This internal Yang Ming email states, "As per attached mail, we had been asked by local shipper to provide the return shipment number to them for filling in the I.E, container *to avoid the Global terminal – exam.*" (emphasis added by SA).

Form 3-300B
(Rev. 01/25/2012)

AED-0011487

This document contains neither recommendations nor conclusions of the Office of Law Enforcement, U.S. Fish and Wildlife Service. It is the property of this office and is loaned to your agency. It, and its contents, are not to be distributed outside of your agency.

# REPORT OF INVESTIGATION

**Title:  AMERICAN EEL DEPOT**

**INV #:  2015501394**

**Report #: 018**

From: YMFOC FREP Vicky Lee [mailto:vicky.lee@cn.yangming.com]
Sent: Sunday, July 09, 2017 11:06 PM
To: Vicky Hsiao - hou imp <vickyhsiao@us.yangming.com>; Lisa Peng - hou exp <lisapeng@us.yangming.com>; YM-CRRE Jack Chen 陳育馳 <jack.yc.chen@yangming.com>; HOU NAT EXP <HOUNATEXP@us.yangming.com>; Lucia Sze - hou exp <luciasze@us.yangming.com>
Cc: Cathy Carver - hou imp nat <cathycarver@us.yangming.com>; Brenda Cario - hou imp <BrendaCario@us.yangming.com>; Vince Lee - bsc atpp <vincelee@us.yangming.com>; Mey Peng - bsc atpp <MeyPeng@us.yangming.com>; Richard Lu - bsc atpp <richardlu@us.yangming.com>; HOU NAT IMP <HOUNATIMP@us.yangming.com>; China, Fuzhou <ymlfoc@cn.yangming.com>; YM-CRRE 歐美冷櫃組 <CRRE@yangming.com>; YM-CMTC 美洲業務管理組 <CMTC@yangming.com>; YM-CMTC Darren Chang 張鈞傑 <darrenchang@yangming.com>; YM-CTRT 批價組 <CTRT@yangming.com>
Subject: 答覆: E227009369; E227009391; E227009519 RETURNED TO HONG KONG ** EC2722E & EC2725E **
Importance: High


Dear Vicky @ Hou office,


As per attached mail, we had been asked by local shipper to provide the return shipment number to them for filling in the I.E, container to avoid the Global terminal  –  exam.

Please kindly help to check if it could be available. Anything needed, let us know

Thank you very much.


Tks & b regds!

Vicky Lee

Young-Carrier Co. Ltd. FuZhou Rep. office

TEL: 86-591-87808387-201

FAX: 86-591-87807386

Office Mail:ymlfoc@cn.yangming.com

Private Mail:vicky.lee@cn.yangming.com

A second email dated July 10, 2017, (provided to SA Snyder on May 29, 2018 by Yang Ming's Lisa Hay), show that the shipper (CP), was attempting to use IEs specifically to circumvent CBP clearance in the U.S.

Form 3-300B
(Rev. 01/25/2012)

AED-0011488